### WORKING MEN'S BUILDING & LOAN ASSOCIATION v. EPSTIN.

CHATTEL MORTGAGES.—Under facts here it is held that goods mortgaged were sold to mortgagee at an agreed price and credited on mortgage debt, and mortgagor held to have sufficiently consented in writing to the sale, and the rule that seizure of mortgaged chattels by mortgagee without sale extinguishes debt, does not apply.

Before WATTS, J., Richland, Summer Term, 1904. Reversed.

Action by Workingmen's Building and Loan Association against Philip Epstin, in his own right and as executor of Amelia Epstin, T. A. Wilbur and son *et al.*

From Circuit decree, defendants, T. A. Wilbur & Son, appeal.

*Messrs. Lyles & McMahan* and *A. D. McFaddin,* for appellant.

*Messrs. Andrew Crawford* and *John T. Sloan,* for Epstin, contra.

April 2, 1906.   The opinion of the Court was delivered by

Mr. Justice Jones.   The present controversy is between Wilbur & Son, junior mortgagee, and Epstin, mortgagor, over a fund of $336.18 in the hands of the master, being balance of proceeds of foreclosure sale of real estate of defendant Epstin after payment of the plaintiff's senior mortgage.   The contention before this Court centers on the question whether Epstin's debt to Wilbur & Son was overpaid, as claimed by Epstin, by a sale of a stock of goods by Epstin to Wilbur & Son on November 22, 1897, at a valuation of $3,075.78, or was it merely credited, as claimed by Wilbur & Son, by a sale of said goods on the 22d of December, 1897, at an agreed valuation of $1,793.97.   If Epstin's version of the transaction be true, then Wilbur & Son would be indebted to Epstin and would have no right to the surplus fund in controversy.   If Wilbur & Son's version be the correct one, then Epstin is indebted to them in the sum of about $425.14, and Wilbur & Son would be entitled to the fund in question.   The master and the Circuit Court do not accept either of these versions, but proceed on the theory that the stock of goods was not sold by Epstin to Wilbur & Son at an agreed price, but that Wilbur & Son took possession of said goods under a chattel mortgage thereon for $2,500 and not having sold the goods as required by sec. 3004, Civil Code, the mortgage debt is extinguished, and so crediting Wilbur & Son's claim against Epstin with said sum of $2,500, would leave Wilbur & Son not entitled to the fund in controversy but indebted to Epstin in the sum of $292.49, with interest from December 27, 1898, for which sum, with costs, decree was rendered against Wilbur & Son.

After careful consideration this Court is of the opinion that the goods were sold by Epstin to Wilbur & Son on December 22, 1897, at an agreed price of $1,793.97, that there was sufficient consent thereto expressed in writing

signed by Epstin to comply with the provisions of sec. 3004 Civil Code, that Epstin is indebted to Wilbur & Son in the sum of about $425.14, and that Wilbur & Son are entitled to the fund in controversy.

The master expressly found as a fact that "Wilbur & Son did not take the goods at the valuation of $3,073.78 fixed in the inventory exhibit P," and the Court concurs in this finding, which is not excepted to by Epstin and in our opinion is well supported by the testimony. This conclusion utterly destroys the contention of Epstin that there was a sale of the goods to Wilbur & Son on November 22, 1897, at the valuation shown by the inventory of that date, known as exhibit P, and we may dismiss further consideration of circumstances relied on by Epstin to show that he made such sale.

The inquiry, then, is, was there a sale of the goods on December 22, 1897, at the agreed prices, aggregating $1,793.97, as shown by the inventory of December 22, 1897, known as exhibit Y? That there was such a sale is supported by the tetsimony of T. A. Wilbur and T. S. Wilbur, and by their bookkeeper, D. L. Alexander, and is opposed only by the testimony of Mr. Epstin, whose contention throughout was that the sale was made November 22, 1897. The testimony is, therefore, undisputed that there was an actual sale and delivery of the goods by Epstin to Wilbur & Son, the only point of difference being the exact time of the sale and prices agreed upon, and it has been shown that the sale did not take place on November 22, 1897, under the inventory of that date. The testimony shows that Epstin was present and participated in taking the inventory of December 22, 1897, exhibit Y, along with the representatives of Wilbur & Son and in his own handwriting made correction of errors in said inventory. The first page of this inventory, exhibit Y, purports to be "Stock of Philip Epstin, November 22, 1897," pages 1 to 9 inclusive, purport to contain "Goods sold to T. A. Wilbur & Son, December 22, 1897," in the handwriting of a clerk of T. A. Wilbur

37—73

& Son, then follows the items of the stock, showing number or amount, the price and the total at the end of the line, aggregating $1,793.97. In addition to the foregoing is the following receipt produced in evidence:

"Charleston, S. C., Dec. 22, 1897.

"Received from T. A. Wilbur & Son, seventy-five and 00-100 dollars on account of purchase stock as per inventory this date.

"$75.                    Philip Epstin, Trustee."

In view of all this testimony, oral and written, we cannot accept the finding of the master and the Circuit Court that Epstin did not agree to the sale as per inventory of December 22, 1897.

Sec. 3004, Civil Code, prescribes the manner of advertising sale by the mortgagee of personal property under mortgage, but expressly provides that the mortgagor may consent in writing to a sale in some other mode or at some other notice. The mortgagor's receipt in this case in connection with the inventory of December 22, is a sufficient consent in wrting to the sale on that date. The rule of law which extinguishes the mortgage when a seizure of all the mortgaged chattels is made and the sale is not conducted as required by statute, has, therefore, no application in this case. These conclusions go to the marrow of this controversy, and it is not important to consider the exceptions in detail. We sustain appellant's exceptions raising the questions discussed and overrule all conclusions of the Circuit Court inconsistent with the views announced.

The judgment of this Court is, that the judgment of the Circuit Court is reversed in so far as it decrees against Wilbur & Son in favor of Philip Epstin for the sum of $292.49 and costs, and denies Wilbur & Son the right to the fund in controversy; whereas, Wilbur & Son are entitled to receive the fund in controversy, it being less than the sum due by Epstin to them; that in all other respects the judgment of the Circuit Court is affirmed.